Okay, the first case on the docket this morning is 5-15-0049, Rheinecker et al. v. Burning Star Green Energy. Um, Mr. Osmond? Good morning. I'm going to proceed with an audit. Good morning. Good morning. In your honor, counsel, members of the audience, I'm Ronald E. Osmond of the firm of Ronald E. Osmond and Associates, and I represent the defendant appellant, Burning Star Green Energy, LLC, in this matter. I would like to reserve 10 minutes of my time to add to my rebuttal for a total of 15 minutes if that's acceptable to the court. That's acceptable. Thank you. Um, this is a very targeted, limited appeal on the defendant appellant's behalf. And based solely on the comment of Judge Gene Gross' ruling in denial of attorneyship in the case that Tom Rheinecker, Janet Rheinecker, John Gordon, and Harold Dunham brought requesting an injunction and other relief against Burning Star Green Energy, LLC. I would refer the court to the judge's order, which is on page 00274 to 00278. And I'm going to read the applicable part of the order that relates to the award of the defendant's fees. In this case, there was two separate agreements involved. One was a lease agreement for real estate, and the other was an agreement for sale and purchase of carbon deposits entered into by the parties. In both of those agreements, there was an attorney's fee provision providing for the collection of attorney's fees by the delaying party against the non-delaying party. Judge Gross entered in the order on 000278 appellant's states. In fact, this is a matter of chancery, and because it is a personal question of fact, due to the defendant's failure to submit a timely certificate of publication, this court declines to award attorney's fees to either party, even though the agreements do provide for such an award to the prevailing party. Now, the lease agreement, and I'm going to refer you to the lease agreement, is in the record, and the applicable page on the attorney's fees is 00291. Mr. Osmond, let me interrupt you for just a moment. Yes. Do you take the position that the award of attorney fees is absolute, that the court has no discretion despite the wording of the contract? Assuming the wording, which is as it is, that your clients won, and the contracts say there are attorney fees capable of being awarded, do you believe that a court has any discretion? In Illinois, Your Honor, I can find no cases that will provide for a court to be able to rewrite the contract between the parties in regards to the attorney's fees. There is no case that says that in chancery or law. The court has the distinct discretion to look at the amount of the attorney's fees, and in the cases that have been cited, to determine the amount of the attorney's fees, whether they're reasonable to deny or allow. But the court in chancery or in law, for that matter, does not have a right to rewrite the agreement of the contract to provide what the court would be doing, which is saying that we agree that the prevailing party will pay the attorney's fees unless there is a close call of fact on an issue. That's what the court has done. And there is no support for that anywhere in Illinois law. I've found none. The plaintiffs have found none. And to answer your question, yes, I do not believe that a judge has the ability to rewrite that contract, whether it's in equity or law. So you believe that if the court denies the attorney fees, was there a petition for attorney's fees? No, there was a request for attorney's fees in the first pleadings. And we requested that we have a hearing again and determine the amount later, which is a normal procedure in the circuit courts. Right. So you believe that the court must, on the whoever wins, must absolutely enforce that provision as well? That is our position, Your Honor. And especially in this instance where the only stated reason is that there was a close call on an issue of fact, which, by the way, that issue of fact the court had already determined to be of no moment because the condition preceding for the good faith and fair digging was not in control of the defendant. It was in control of the IDNR, and the IDNR was the one that had caused the delay. So in this case, Judge Gross not only ruled that it was a close question of facts and he's going to deny attorney's fees, he says that he's ruling in the previous paragraphs that really doesn't make any difference because it wasn't in my client's control anyway. So, yeah. I'm sorry I interrupted you. No, Your Honor. Basically, there's not a whole lot more to say except, as we all know, in Illinois, the only way you can collect attorney's fees is by statute such as a civil rights fee-shifting statute or by agreement. If there is an agreement, then the court will closely scrutinize under strict scrutiny that agreement. That's the law. And we have indicated that in our briefs and the cases concerning strict construction are in the brief. Since that's not a direct issue in this case, I'm not wasting your time on that. May I ask you another question? Sure. Did the Burning Star Energy, or any party in this case, claim that the portion of the contract that allowed for attorney fees was somehow ambiguous or somehow entered into not in good faith? Was there any attack on that clause, per se? No. And I would point out to the court that in the plaintiff's brief, I believe on page 23, it indicated that the lease agreement did not have an attorney's fees clause present, and that is incorrect. You can read it. It's at A003303, paragraph 23J, is in the agreement for purchase. The lease agreement is on 009291, paragraph 23J also. So there is an attorney's fees provision in there. Now, you've let me skip a couple pages of my notes. Sorry, you can return. No, that's fine. Now, it is without a doubt that the plaintiff is a prevailing party and the defendant is a prevailing party in this litigation. The plaintiff was denied all of its requested relief. And as the prevailing party, it is entitled to recover its attorney's fees and costs from the defendants in accordance with the attorney fee provisions in the agreement. As I indicated, the plaintiff has not cited a single case to support the trial court's belief that in a chancery case, it has the power to ignore the contract provisions due to a, quote, close call on one factual issue, especially since that close call on the factual issue had already been determined by the court to be of no moment in the decision. And that's in the judge's order. Now, the three cases that are cited by the defendants in their brief on page 23 do not support the proposition that, as they claim, that the judge has the absolute discretion of whether or not to award attorney's fees. One of the cases, the state of Callahan case, is not applicable since the Board of Attorney's Fees in the state cases is controlled by statute, the dissent and distribution statutes. The other two cases, the first one is, is that McHenry Savings Bank case involved a promissory note and guarantees that included and had attorney's fees provisions in it. The court merely said that, the court said that a certain court had discretion in the amount of attorney's fees to pay, and then it set forth about five, five listings that we all know about reasonableness, how difficult it was, et cetera, et cetera, when reviewing the award. The Mountbatten Security case, security company case, involved an indemnity agreement between the insurers and the indemnity agreement contained an attorney's fees provision. And again, the court cited the five different standards as to what is a reasonable, what you should pay on attorney's fees. None of those cases are applicable. Now... Attorney fees were awarded in those cases. Correct. Correct? Yes, Your Honor. But there wasn't an issue, as I understood, though, of whether to award it or not. As you've mentioned, the factors that are used. That's correct, Your Honor. In both of those cases, there was documents that fall into the exceptions to non-awarding attorney's fees, which that was a contract, the same as we have here. Now, as I indicated earlier, I agree that the trial judge in this case has a discretion to determine the amount of fees and costs to be awarded, but does not have the authority to deny attorney's fees or costs of recusal in accordance with the contractual obligations between the parties due to a close call for a single fact issue. If, in fact, that is the law, there would be no throttle upon the circuit court judge in regards to attorney's fees. They could. They decided. The reason both were not going to follow the contract. And, again, I will repeat, I have found no case law in Illinois in equity or law that allows a judge to even allowed to rewrite terms of contract. Finally, I frankly do not understand the plaintiff's citations to the award of attorney's fees in marital cases. And I would submit that the cases cited are of no moment to this case. Since I don't understand them, I guess I can discuss them any further other than say that's my statute. It has nothing to do with it. Defendant requests that this court rule that the attorney's fees and cost provisions of the lease agreement and agreement for sale and purchase of carbon are enforceable. That defendant was a prevailing party and remanded this matter to the circuit court to determine the award of attorney's fees and costs that are appropriate. Thank you. Thank you, Mr. Osmond. Is it Mr. Grimmick? Dunn. Dunn. Oh, I'm sorry. I misread. I apologize. That's horrible, Your Honor. Mr. Osmond. Mr. Dunn. Good morning, Your Honors. I guess I should say, starting out, that Mr. Osmond indicated that he had a problem understanding my discussion. I guess this is not a new thing. Back many, many years ago, I actually had him as a student in law school. And he came up to my office once or twice and told me he had real problems understanding my lectures. So this is not a new thing between Mr. Osmond and I. I want to talk about two things. I guess you're all showing your age now. Yes. I'm dating myself. That is exactly right, Your Honor. Carbon dating. Don't feel alone. I want to talk about two things. One, the attorney's fees, and then also we took a cross appeal and appealed the judge's finding that both agreements were valid and enforceable. And obviously, if this court were to either remand or reverse on a field, then the Attorney's Department of Human Energy is not entitled to attorney's fees at all. But because it seemed to be of interest to the court, I do want to point out certain things. Number one, it's our position that the court was clearly troubled by the conduct of Party Star Green Energy and the way it prosecuted this permit. And the way we read the order is that the trial court was exercising its discretion not to award any attorney's fees at all. We feel like that should be reviewed under the use of discretion. And the trial courts make certain factual findings about how Party Star Green Energy did not exercise diligence in the prosecution of a carbon slurry permit. Well, let me ask you. The court was obviously troubled by this case, thought it was closed. And reading between the lines may have had the view that you just expressed. But wouldn't that be more appropriate in the court's discretionary consideration of the amount of attorney's fees? And the necessity of the activities generating the attorney's fees as opposed to a right to petition for attorney's fees and have some sort of award. It seems to me, offhand, you're saying that an element that could be properly exercised as discretion as to the amount could actually, in fact, preclude consideration of the award of attorney's fees. I'm not sure how you can take that position in light of the contractual language. Your Honor, the way I read the opinion is that the court did review, did understand that there was a request for attorney's fees and decided in its discretion not to award any. Oh, there's no question that's the way to read the order. What I'm saying is the factors that you just indicated, wouldn't that be more appropriate in the consideration of the amount, possibly a diminution of attorney's fees as opposed to whether to award any at all? Would we be here, Your Honor, if the trial court awarded a dollar? We may not. It's a discretionary call. And I don't see the difference between a dollar and zero. Okay. And further, the statement was made in the first pleading that there was a request for attorney's fees. There was not. If you look at the request for relief as to count one, the answer, it requested the court award defendant its cost incurred in him in such other relief as the court deemed to be just and proper. It didn't ask for attorney's fees. It seemed as a result that it didn't ask for attorney's fees. It didn't ask for attorney's fees with regard to prayer for relief as to the affirmative defenses. In fact, we didn't take the appeal, and the order was entered in January 2nd of last year, and the appeal came in on the 29th of January. Nowhere in the record is there any evidence of any attorney's fees. There wasn't any request for a hearing as to attorney's fees. There wasn't any offer of proof made as to attorney's fees. So there's nothing in this record here, right here, right now, that the trial court could award any attorney's fees. But isn't that the problem, though? When you make the argument about the lack of diligence as being a factor, and the court could award zero, there's no evidence that the court did consider the various factors. So if you read the order the way you want to read it, it sounds like you're saying that the court considered the factors and found that the amount should be zero.  Well, I think, obviously, if you look at the order, it doesn't go through the traditional factors for award of attorney's fees. It doesn't do that. Right. And so I'm wondering how you can read the order that way, because there's a lack of a hearing. There's certainly no due process to the other side if you read it that way, that the diligence factor makes it zero. I mean, you may be right at the end where there's a hearing, and the court awards zero. If plaintiffs took the position, take the position that the Bernie Stark Green Energy had all the due process it was entitled to at the hearing, you look at the transcript, there wasn't any offer of proof as to attorney's fee. There wasn't any request of the court to reserve a ruling on the non-issue of final order until such time as the attorney's fees could be sorted out. There wasn't anything like that. So I don't think there's any due process issue. I do want to make this. It's very important because on the cross-appeal, there's basically three grounds why the court erred in not declaring both agreements. One, the facts indicate, and there's no dispute about this, that in the summer of 2012, Bernie Stark Green Energy ran out of money, didn't tell the plaintiffs that they'd run out of money, didn't pay their engineering fees, and even though the contract required Bernie Stark Green Energy to exercise reasonable diligence, did absolutely nothing. In fact, there was a permit that needed to be published in the newspaper, and because Bernie Stark Green Energy hadn't paid their attorney's fees, and it would have been a minimal expenditure, never was published, the Department of Natural Resources required them to go back and republish the whole thing. Reinecker testified that if he'd just been told what was going on, he would have absorbed the costs of the attorney's fees, so he could have been moving this thing along. No notice, no nothing, nothing. I don't think they exercised reasonable diligence. I think, well, even more importantly is that if you look at the lease, it requires the procurement of liability insurance. Now, in the record, December 12, 2012, it was a notice of default, and this is the statement made, it says, Bernie Stark Green Energy has not procured liability insurance and provided the Reineckers a certificate of insurance, paragraph 2 of the lease. That can be found at C-453, C-90, and claims exhibit G, incorrect. Okay, now if you look at the agreement they've got once they've been received this notice, they've got 60 days to cure, okay? Nothing happened. Finally, we lost our patience, and on June 25, 2013, we terminated the lease. It wasn't until several months afterward that Bernie Stark Green Energy goes out and procures insurance. We take the position that the certificate of insurance was defective because the certificate didn't specifically say, as paragraph 10 indicates, that Reinecker will receive notice of any default in payments so that we can go in and cure that deficiency and keep the insurance on there. It's our position, and we cite cases for this, that that's a default. You can't come in four or five months later and say, we can just ignore. I mean, you know, it's good for the goose, it's good for the game. They're right. There's a trace of these clauses in there. It says we both agreed it's in there. It's not ambiguous. I agree with that. But there's also a provision in there that says they have to have insurance. There's also a provision in there that says they have to procure insurance. There's also a provision in there that says we can send out a notice of a default, and they've got 60 days to occur, to cure. There's also a provision in there that says if they don't cure within 60 days, then the lease is terminated. Now, why don't we enforce that? If you look at the order entered by Judge Gross, for some reason, he doesn't even deal with this argument at all. You can read the order in vain, and there's nothing there in the order. And we take a position, as a matter of law, that the lease is terminated. If the lease is terminated, you can see that the two agreements are read together, and they have to be coterminous. And we cite case law in our brief that says, you know, the very purpose of the carbon sales agreement is they have to have a lease. And once the lease is terminated, then the carbon sales agreement is terminated. Now, if you look at Section 10 of the carbon sales agreement, it's on the C27A17 of the record. You will see in there, Your Honors, that Burning Star Green Energy has promised to exercise reasonable commercial diligence in the prosecution of this permit. And what happened was that in the summer of 2000, late spring, early summer of 2012, they stopped paying their engineers. Absolutely nothing happened on the permit. And we have an email that's plaintiff's exhibit number 11, which can be found at C511 of the record, where we see Scott Fowler, who testified in this case. And he was the one head of the division that prosecutes these permits and issues these permits and said, basically, even if the department had wanted to, it could do, would do, nothing, until a very essential study, a wildlife study, had been tendered by Burning Star Green Energy to the department. And what the record indicates is that that study was not tendered to the department until February of 2013. So essentially, we have nine, ten months where Burning Star Green Energy, because it hadn't paid its attorney, its engineering fees, has done absolutely nothing to advance the prosecution of this permit. And the Reineckers knew about that or did not? The Reineckers found out about this in August of 2012. And you will see in the record, there's a series of letters going back between myself and Burning Star Green Energy indicating, look, you know, you guys are going to have to do something. You're going to have to do something very promptly about this. We gave them what we felt was a reasonable period of time to get their act together. And then in December of 2012, we sent out the notice of default. And with the intent to terminate, we gave them way more than 60 days. And then as of June of 2013, we terminated the lease. Within two or three months thereafter, we instituted this lawsuit. We did everything we possibly could. One of the early things we did is we moved for temporary restraining order. And then there was a hearing on that, and that was denied. Then we moved for summary determination of fact. That was denied. Then we finally had a hearing on the case, and then you read the order. So we have been diligent once we realized that there was a problem with these folks to try and get them off of this permit so that we can do something about it ourselves. Because we concluded in the fall, and frankly in the fall 2012, early winter of 2013, these people were not going to be able to produce. They're not going to be able to honor their commitments. And we want them out. And I don't know what else, you know, we could have done under the circumstances. I mean, I repeat one more time because it's so important to us. December of 2012, C. foot 453, C. 1920th Exhibit G, we say, we list a whole bunch of defaults. But one of the things is, I mean, they're out there on this property doing testing, doing other things, taking water samples, doing for a procurement permit. They don't have any liability insurance. And we call it to their attention, and we say, curious. They got 60 days. And they haven't done anything as of June of 2013. We terminated the lease. Well, if the lease is terminated, then the carbon sales agreement has no function. It's terminated. They're not entitled to any attorney's fees. What we're looking for, I think the case is so clear as a matter of law from this record that this court can enter into order reversing the trial court and saying both of these agreements are dead. They're terminated. They're out. And if there aren't any further questions, I'll see you tomorrow. So if both agreements are terminated, as you're suggesting, then what relief are you requesting from this court? We would be asking, Your Honor, for just as we do in our pleadings. We're just asking for a declaration from the court saying that both agreements have been effectively terminated under the provisions of the agreement. And then we can take it from there. Thank you, Your Honor. Thank you, Mr. Dunham. I apologize for mistaking you earlier. You shouldn't be. Mr. Osmond. Thank you, Your Honor. I'm not sure whether my inability to understand Mr. Dunham is the professor's fault or the student's fault, but we'll just leave it at that. First off, the issue of attorney's fees in the pleadings, whether it was requested or not, at the end of the case, in the transcript, I requested attorney's fees. It's obvious they were requested because the judge addressed that issue in his decision. So it's obvious that that was before the court. As this court well knows, procedure for attorney's fees, the judge denies the attorney's fees, then you don't have the hearing. If you do, then you have a hearing on attorney's fees. That's the way I've practiced law for 30-some odd years. If that's wrong, then it's wrong. Now, on the cross-appeal, I'm going to go a little bit backwards on this in regards to the reasonable commercial efforts to obtain the permit. Mr. Dunham has stated that time and time again. He refers you to the agreement in his paragraph 10 of the agreement to purchase. Let's read that. What page are you on? It's on page 000297, Your Honor. 297? 297, yes. Just give us one moment. Okay, I'm there. And this is important because they were claiming that we violated the requirement of good faith and fair deeding that's in every contract. Well, the contract itself sets out and defines what is reasonable. The contract then says timeframes. In connection with preparation for the commencement of the recovery operation, BSGE shall use reasonable commercial efforts to complete the activities listed below within the time periods listed below. That's the standard. We will use reasonable commercial efforts to complete the activities below. And it sets them out, A through I. The trial court specifically found that all of those timeframes were met. The trial court specifically found that the delay caused in the republication was not Bernie Starr's fault.  The record shows that IDNR sent a certificate of completeness out to Bernie Starr telling him that their application was complete. Scott Fowler testified that was in error. Now, counsel makes a big issue about we didn't have any money we were owed. They argued that in the motion for preliminary injunction. They argued that in their summary judgment motion. And Judge Gross, who has familiarity with coal leases, said that's not unusual. You get your permit, then you get your financing based upon your permit. Nobody puts the money in until they know that they can do it. That's the way the coal industry operates. There's nothing in this agreement that requires us to keep a certain amount of equity. There's nothing in this agreement that requires us to send Mr. Reineberg, who's trying to take this lease away from us, and say we don't have any money to proceed. That's just not good business. Well, Mr. Dunn didn't mention it. One of the issues that they bring up is the IDNR notices. And Judge Gross found there was a complete failure of any evidence that there was ever any IDNR notice sent out because there wasn't. And if you re-judge Gross's order, in regards to paragraph 10, I'm sorry, in regards to the insurance requirement, here's what he says. Neither the alleged breach for failure to provide a proper certificate of insurance nor the failure to forward IDNR notices constitute material breaches justifying rescission. Plain reading of paragraph 10 of the lease agreement does not require that the certificate include language that a landlord would receive 10 days' notice of cancellation. The policy only had to provide for notice of cancellation. However, this fact was never proven at trial by plaintiffs. The only evidence offered on this point was the testimony of Michael Sexton, who stated the policy did provide for notice of cancellation to the Reiners. Likewise, the plaintiffs failed to present evidence that their IDNR notices were not provided by the defendant. It would appear that IDNR has not provided any notices. The defendant, in fact, has done little to any review of the applications. Now, the other issue I believe, back to my notes, we discussed the running out of money in the summer of 2012. Would you mind addressing the next paragraph of the order you just read where the court said that the only close question in the dispute was the consequence of the defendant's failure to pay his engineering firm? Mr. Donovan made reference to that in his argument. Oh, correct. Thank you, Your Honor. 276. Yes, yes. The consequence of the defendant's failure to pay an engineering firm. There's not any doubt of that. And Mr. Sexton bought Burning Star and hired him to buy it. And in the changeover, the engineers quit working because they weren't paid. Once Mr. Sexton was aware of it, he paid the engineering fees and it completed and went on. Now, no doubt that he didn't have, he didn't have, they didn't have the engineering fees paid. The issue then, whenever the judge says it's a close call, the issue is then did that delay result in them not meeting any of the deadlines that set out in their requirement? And Scott Fowler testified that it didn't have any effect on him. You read the testimony of the ID&R and how they issued permits and things that would just make your blood go cold if you're in the coal business or in the oil business. I mean, there's just no way. And the judge found that it was pure speculation that the republication caused any delay. So while the judge may think it's a close call on whether or not that fact would have caused a breach or a rescission, I don't believe it is when you read the agreement itself and you look at the standards and set forth. There is a duty of good faith and fair dealing in every contract, but if your contract defines what that is and you stay within the parameters of the definition in your contract, there's no breach of the duty of good faith and fair dealing. It's only when there's no definition that the court then has to look at whether it's an open-ended, normally you get into that question where there's an open-ended grant of authority and then one party takes advantage of the other because they overstepped their bounds. In this case, the contract itself, paragraph 10 of the red paper, sets forth the standard for good faith and fair dealing. The court specifically found that every one of those deadlines was met. There can be no breach of good faith and fair dealing if they did everything they were supposed to do by contract. Did the court make that finding because it rejected the opinion of John Gordon or was there independent evidence aside from John Gordon's testimony? There was testimony and exhibits of the time whenever the application was submitted, when it was deemed complete. That was by the engineer, the art engineer. They testified to those steps when it was done. John Gordon, of course, even lined as a plaintiff. And John Gordon also has a financial interest because he has an exclusive right to sell some of the carving to designated partners. So, I mean, I don't know why the judge discounted Mr. Gordon's testimony. I don't know why I would discount his testimony. But the engineer, the art engineer, testified to each of those steps. There's exhibits in the record that show that we did all those steps up to the point where we're at that time, within the time limits that were set forth in the contract. And I would submit to you, and the judge may think it's a close call on whether or not that is an event that would rescind the contract. I think he applied the wrong standard because of the standards set forth in paragraph 10. Well, regardless of the standard applied, he made the correct finding in your opinion. That's great. That's great, John. I'm not going to argue with that. I believe Your Honor, unless there's any further questions. That's as well. Yes. Okay, thank you. Appreciate you and the story there. Thank you. All right, this matter will be taken under advisement and the court will issue the reports. Thank you, gentlemen.